Filed 3/14/22  P. v. Aguilera CA2/5

Opinion following transfer from Supreme Court

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B308311 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA352700) |
| v. | |
| EDUARDO AGUILERA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Heidi Salerno and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

Eduardo Aguilera appeals from the trial court's order denying his petition for resentencing under Penal Code section 1170.95 for his prior convictions of attempted murder and voluntary manslaughter.[1]  He contends the trial court erred in concluding section 1170.95 does not apply to his attempted murder and voluntary manslaughter convictions.  Due to an intervening change in the law, the prosecution concedes the statute now applies to those crimes.  However, the prosecution argues that the denial of defendant's petition should nonetheless be affirmed as the record establishes he is not eligible for relief as a matter of law.  We disagree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.    *The Information***

On October 14, 2009, defendant was charged by information with three counts:  (1) the murder of Melissa Paul (§ 187, subd. (a)); (2) conspiracy to commit murder (§ 182, subd. (a)(1)); and (3) the attempted premeditated murder of Jorge Chamu (§§ 664/187, subd. (a)).  Gang and firearm enhancements were also alleged with respect to each count (§§ 186.22, subd. (b)(1)(C), 12022.53, subd. (d)).

On November 19, 2009, the information was amended to allege a number of overt acts in support of the conspiracy count.  According to the overt acts, the prosecution was proceeding on the following theory:  Defendant, Gabriel Orozco, and others were members of the same gang.  On February 6, 2007, defendant, Orozco and others took defendant's minivan to an intersection where they located victims Paul and Chamu walking together.  The driver pulled up near the victims; one of the conspirators asked Chamu, "Where you from?"  Someone in the minivan

---

[1]    All further statutory references are to the Penal Code.

2

yelled, "Just shoot them." Orozco pointed a handgun out the front passenger window and fired several gunshots, killing Paul. The conspirators then fled and abandoned defendant's minivan. A few days later, defendant "bragged to a girl on a bus that he and his homeboys were responsible for the murder." Defendant was not alleged to be the shooter; the charging allegations were unclear as to whether he was alleged to be either the driver or the person who shouted, "Just shoot them." or both.

## 2. *Defendant's Plea*

On September 30, 2010, pursuant to a negotiated plea, the information was amended to add a count of voluntary manslaughter (§ 192, subd. (a)). Defendant entered a plea of no contest to voluntary manslaughter and attempted murder. He admitted the gang enhancement and that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c) & (e)(1)). Defendant's counsel stipulated to a factual basis for the plea "based upon the police reports and preliminary hearing transcript." The court sentenced defendant to 20 years in prison, and dismissed the remaining counts. Defendant did not seek appellate relief from his plea.

## 3. *Defendant's Section 1170.95 Petition*

On March 28, 2019, defendant, representing himself, filed a petition for resentencing under section 1170.95.

The prosecution opposed the petition on the basis that defendant was convicted of manslaughter and attempted murder, but relief under section 1170.95 was limited to murder convictions. The prosecution also represented, "Should the court deem the Petitioner eligible to pursue the petition for resentencing, the People intend to submit supplemental briefing based upon the record of conviction and additional new evidence,

3

and will prove beyond a reasonable doubt that the defendant personally acted with malice aforethought when aiding and abetting the killing of Melissa [Paul] and the attempted murder of Jorge [Chamu].  To that end, the People would require an extension of time to obtain the trial transcripts."  In its opposition, the prosecution set forth a detailed account of the facts of the crime and subsequent investigation, which was purportedly "taken from prior pleadings filed related to the" shooting.  None of those documents were attached as an exhibit to the prosecution's opposition.  Nor were there record citations in its multi-page factual discussion.[2]  As the prosecution argued only that section 1170.95 did not apply to convictions of manslaughter and attempted murder, it did not rely on the factual description for its argument.

On June 10, 2019, the court appointed counsel to represent defendant.  The court stated defendant's reply to the prosecution's opposition was due 30 days from the date of its order.

Defendant's counsel moved for several successive continuances, due to the press of business, personal reasons, and – most importantly – the unavailability of the record.  Defendant's counsel represented that the District Attorney had agreed to make copies of discovery and the record available to him, but delivery was repeatedly delayed.  Due to the

_____

[2]      For example, the prosecution set forth certain statements attempted murder victim Chamu allegedly made to detectives investigating the shooting.  The prosecution notes, "This interview was recorded on DVD."  Neither the DVD itself, nor a transcript of the DVD, was provided to the trial court as part of the opposition.

4

continuances, and pandemic-related court closures, it took over a year for defendant's counsel to file his reply. The reply was filed on June 25, 2020. Counsel represented that he was still awaiting the record, which would be necessary for further proceedings, but felt able to brief the legal issue of the statute's applicability to manslaughter in its absence.[3]

On August 7, 2020, without holding a hearing, the court denied defendant's petition, concluding that section 1170.95 applies only to murder, not voluntary manslaughter or attempted murder.

### 4.     *Appeal, Supreme Court Review, and Transfer*

Defendant filed a timely notice of appeal. We affirmed the denial, on the basis that section 1170.95 applied only to murder convictions. (*People v. Aguilera* (Sept. 13, 2021, B308311) [nonpub. opn.].) Defendant petitioned for Supreme Court review. On November 23, 2021, the court granted review and transferred the matter to this court, with directions to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551). On November 30, 2021, we vacated our decision and permitted the parties to submit further briefing. We now reverse the denial of the section 1170.95 petition.

---

[3]     Counsel did, however, state an objection to the "prosecution's proposed factual basis by trial counsel at time of plea as a basis for any factual assertions within police reports and other non-records of conviction." He made no argument in support of this objection.

<h1 style="text-align:center">DISCUSSION</h1>

**1.** ***Section 1170.95 Applies to Manslaughter and Attempted Murder***

Senate Bill No. 775 (2020-2021 Reg. Sess.), effective January 1, 2022, amends section 1170.95 in several respects. As relevant to this appeal, it specifically expands section 1170.95 to apply to defendants convicted of attempted murder or manslaughter. (Stats. 2021, ch. 551, § 2.) The Attorney General concedes the effect of this amendment.

**2.** ***The Prosecution Has Not Established Defendant is Ineligible for Relief as a Matter of Law***

The Attorney General argues that we should uphold the summary denial of relief on an alternative theory – one not argued to the trial court – that defendant is ineligible for relief as a matter of law because his convictions were necessarily predicated on a theory of actual malice.

Section 1170.95 provides an opportunity for resentencing for defendants who were convicted on a theory of felony murder or natural and probable consequences; it also applies to defendants who were convicted of murder, attempted murder, or manslaughter by plea "in lieu of a trial at which [they] could have been convicted of murder or attempted murder" on one of those theories. (§ 1170.95, subd. (a)(2).)

When a defendant seeks resentencing under section 1170.95, the trial court is to review the petition for facial sufficiency. If it is facially sufficient and defendant requests counsel, the court must appoint counsel. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Once counsel is appointed, the matter is briefed and the court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If

6

the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 971.)

Here, the Attorney General acknowledges defendant's petition alleged that he fell within the scope of the statute, in that he entered his plea in lieu of going to trial where he could have been convicted of murder on the basis of felony murder or the natural and probable consequences doctrine. The court found the petition facially sufficient and appointed counsel. Although the court did not conduct a hearing to determine prima facie eligibility, the Attorney General argues that the record establishes defendant's ineligibility as a matter of law. Specifically, the Attorney General contends that the record of conviction demonstrates that defendant was never charged with,

7

or at risk of conviction of, murder under the felony-murder rule or natural and probable consequences doctrine. The Attorney General relies on the charges in the information and the description of the crimes in the probation report to support its conclusion that the theory of murder pursued against defendant was always only actual malice murder, based on his intentional aiding and abetting of the shooter with the intent to kill.

First, the Attorney General notes that defendant was charged with conspiracy to commit murder, an offense requiring an intent to kill. But conspiracy was not the only charge, and defendant did not plead to it. When defendant entered his plea to manslaughter, he was also facing the charge that he "unlawfully, and with malice aforethought" murdered Paul. That "generic" charge of murder did not limit the prosecution to any particular theory. "[D]espite the fact that the indictment charged [defendant] with murder committed with malice aforethought, it allowed the prosecution to proceed on *any* theory of murder." (*People v. Rivera* (2021) 62 Cal.App.5th 217, 233 (*Rivera*), review granted June 9, 2021, S268405.) We conclude that the language of the information alone does not establish, as a matter of law, that the murder charge against defendant was limited to a theory of actual malice murder.

Second, the Attorney General relies on the crime as described in the probation report to establish that defendant's guilt was, in fact, that of an aider and abettor with intent to kill – and this was therefore the only theory which could have been pursued by the prosecution. The showing is inadequate. When a court is performing its review of a defendant's prima facie showing of eligibility, it cannot engage in factfinding, but can rely only on readily ascertainable facts taken from the record of

8

conviction. (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481.) Here, when defendant entered his plea, he stipulated that a factual basis existed in the police reports and the preliminary hearing transcript – neither of which is part of the record before us.[4] He did not stipulate to facts contained in the probation report. When a defendant goes to trial, it is often easy to determine, from a review of the jury instructions given, whether the prosecution pursued a theory of felony murder or natural and probable consequences. (*Rivera, supra*, 62 Cal.App.5th at p. 236.) Here, we do not even have the preliminary hearing transcript, which was stipulated to be a factual basis for defendant's plea and might have shed light on the theories asserted by the prosecution.[5]

---

[4] The Attorney General represents that the probation report "relied on police reports." This is true, but not the complete story. The probation report has several boxes which can be checked indicating the sources of information on any particular page. For the report's description of the facts, the boxes are checked for "POLICE REPORT(S)," "DISTRICT ATTORNEY," and "COURT RECORDS."

[5] There is a dispute in the case law as to whether the *absence* of a mention of felony murder or natural and probable consequences in a preliminary hearing (or grand jury) transcript is sufficient to establish as a matter of law that the defendant was not facing exposure under those theories. (Compare *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166–1168 [when there is no mention in the preliminary hearing transcript of any underlying felony for felony murder or target crime for natural and probable consequences, it is speculative to suggest the prosecution would have pursued one of those theories] with *Rivera, supra*, 62 Cal.App.5th at pp. 236–237 [disagreeing with

We observe that in the prosecution's brief in opposition to the petition, it relied on a number of facts without record support and represented it could supply that support if the matter proceeded to an order to show cause. Defendant's counsel waited over a year to obtain a copy of the relevant records from the district attorney, and ultimately submitted his reply brief on purely legal issues without them. Under these circumstances, we cannot say what is or is not readily ascertainable from the record: We do not have it. An inference drawn from a probation report's factual representations, themselves taken from non-record sources, is, in our view, not sufficient to defeat a prima facie showing as a matter of law. Because the parties may submit additional parts of the record at a section 1170.95, subdivision (c) hearing, we remand for that purpose.

### DISPOSITION

The order denying defendant's petition for resentencing is reversed and the matter remanded for the court to conduct a hearing under section 1170.95, subdivision (c).


                                                    RUBIN, P.J.

WE CONCUR:



            BAKER, J.                              KIM, J.

---

*Nguyen*, because the return of an indictment (or information) based only on certain theories does not reflect a determination that those are the only viable theories available].) We need not take a position in this dispute.

10